UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GAIL HINTERGERGER, et al.,

                Plaintiffs,

      v.                                 **DECISION AND ORDER**

CATHOLIC HEALTH SYSTEM, et al.,        08-CV-952S

                Defendants.

## I. INTRODUCTION

Plaintiffs commenced this action on August 6, 2008, by filing a summons and class action complaint in New York State Supreme Court, County of Erie.  They assert claims of failure to keep accurate records under the Employee Retirement Income Security Act ("ERISA"), breach of fiduciary duty under ERISA, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), estoppel, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment/restitution, and quantum meruit. All claims are based upon Defendants' alleged failure to properly compensate Plaintiffs and other employees for all hours worked and/or for hours in excess of 40 per week at overtime rates and their failure to keep accurate records of time worked for purposes of determining benefits.

On December 23, 2008, Defendants removed the action to this Court and then moved to dismiss it in its entirety.  For the reasons stated below, Defendants' motion to dismiss is granted.

## II.  BACKGROUND

Prior to filing their state court action, Plaintiffs commenced an action in this Court ("the Federal Action") based on the same alleged conduct, which action remains pending. Hinterberger v. Catholic Health System, Inc., 08-CV-380, filed May 22, 2008.  The complaint in the Federal Action originally asserted claims under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), ERISA-failure to keep accurate records, ERISA-breach of fiduciary duty, and RICO, and of breach of contract, breach of implied covenant of good faith and fair dealing, conversion, unjust enrichment/restitution, quantum meruit, fraud and deceit, misrepresentation, and estoppel.

On July 1, 2008, Defendants moved to dismiss the Federal Action in its entirety.  In response, Plaintiffs voluntarily dismissed, without prejudice, all claims except those alleging violations of the FLSA and NYLL, and estoppel.  (08-CV-380, Docket No. 101.)  Shortly thereafter, on August 6, 2008, Plaintiffs filed two actions in state court which, together, "revive" the ten voluntarily dismissed claims.  Both state actions also assert estoppel claims.  Defendants timely removed both actions to this Court.[1]

In the instant Complaint, Plaintiffs identify themselves as "employees" under the FLSA and NYLL, and allege that putative class members, employed by Defendants, were not paid their regular or statutorily required rate of pay for all hours worked.  (Docket No. 1-2, ¶¶ 69-70.)  They further allege that Defendants' were deliberately indifferent to these

---

[1] Upon filing in state court, the instant action was assigned Supreme Court Index No. 2008-9074. As already noted, this action includes claims of failure to keep accurate records under ERISA, breach of fiduciary duty under ERISA, RICO violations, estoppel, breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment/restitution, and quantum meruit.  The other action, filed on the same day, was assigned Supreme Court Index No. 2008-9075.  That action, asserting claims of conversion, fraud and deceit, misrepresentation, and estoppel, also was removed to this Court where it was assigned Docket No. 08-CV-948.

statutory wage and overtime requirements, and that the failure to pay overtime was willful. (*Id*. ¶¶ 80, 89.)  Plaintiffs seek, *inter alia*, "an award of the value of plaintiffs' unpaid wages, including fringe benefits."  Though the wage and hour statutes provide the framework for their Complaint, Plaintiffs do not assert claims under either the FLSA or NYLL.  As noted, those claims are pursued in the pending Federal Action.

Defendants now rely on their prior briefing in the Federal Action (in particular, 08-CV-380, Docket Nos. 86-87) in support of the instant motion to dismiss.  The motion is now fully briefed and ready for disposition.

## II.  THE MOTION TO DISMISS

### A.    Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See* Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).  "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in Ashcroft v. Iqbal, setting forth a two-pronged approach for courts deciding a motion to dismiss.  556

U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The decision instructs district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing <u>Twombly</u>, 550 U.S. at 556-57 (internal citations omitted)).

**B.   The ERISA Claims**

The first and second causes of action are brought under ERISA.  The first, brought pursuant to 29 U.S.C. § 1132(a)(3), alleges that Defendants sponsor pension plans for its employees and "failed to keep accurate records of all time worked by Class Members" in violation of ERISA section 209, 29 U.S.C. § 1059(a)(1).  Plaintiffs allege that, as a result of this failure, Defendants' records are not sufficient to determine benefits due under the plans. (Docket No. 1-2 ¶¶ 110-11, 127-28.)  In their second claim, Plaintiffs allege that Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) by "failing to credit them with all of the hours of service for which they were to be paid, including overtime to the extent overtime may be included as compensation under the Plans, or to investigate whether such hours should be credited."  (Docket No. 1-2 ¶¶ 112, 130.)

4

Defendants contend these claims must be dismissed because Plaintiffs cannot sue under ERISA section 502(a)(3) to recover monetary damages, lack Article III standing to bring a recordkeeping claim, have not yet exhausted their administrative remedies with regard to either of the ERISA claims, and have not sufficiently stated a breach of fiduciary duty claim.   The Court will address the jurisdictional argument first and all others as necessary.

Defendants make a standing argument only with regard to the recordkeeping claim, and contend that standing is lacking because no named Plaintiff has sufficiently alleged a personal stake in the outcome of the dispute.

ERISA section 209 provides, in pertinent part that:

> [E]very employer shall, in accordance with such regulations as the Secretary may prescribe, maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees.

29 U.S.C. § 1059(a)(1).  Section 209 does not provide a private right of action.  For that, Plaintiffs rely on ERISA section 502, pursuant to which:

> A civil action may be brought . . .by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan[.]

29 U.S.C. § 1132(a)(3).

Article III standing requirements must be satisfied even where, as here, Congress grants certain individuals a right to sue.  Raines v. Byrd, 521 U.S. 811, 820 n.3, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997).  As a constitutional matter, standing involves the question of whether a plaintiff has made out a "case or controversy" between himself and the

defendant within the meaning of Article III. The three basic elements of constitutional standing are: (1) the plaintiff must suffer an injury in fact; (2) that is "fairly traceable" to the defendant's conduct; and (3) redressable by the court. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-181 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).  The party invoking federal jurisdiction bears the burden of showing that these elements are present. Lujan, 504 U.S. at 561.  Consequently, if none of the named plaintiffs sufficiently allege these elements, "none may seek relief on behalf of himself or any other member of the [putative] class." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974).

Here, Plaintiffs allege that Defendants sponsor pension plans for their employees, and failed to keep records of time worked by class members such that their records are "legally insufficient" to determine benefits.  (Docket No. 1-2 ¶¶ 110-11).  They rely on Fin. Inst. Ret. Fund v. Office of Thrift Supervision ("FIRF") to suggest that the violation of a statutory right such as section 209, coupled with a statutory avenue for relief such as section 502(a)(3), is sufficient to show an injury for Article III purposes.  964 F.2d 142, 147 (2d Cir. 1992).  The Court disagrees with Plaintiffs' interpretation.  Moreover, the FIRF holding is specific to a breach of fiduciary duty claim and involved an identifiable pool of money to which the plaintiffs had colorable claims.  I find it is distinguishable from the circumstances alleged here for the reasons stated below.

It is well-settled that ERISA, and specifically section 502(a)(3), does require allegations of some individualized injury or deprivation of a right, even if that right is statutorily created.  Kendall v. Employees Ret. Plan of Avon Prods., 561 F.3d 112, 118-19 (2d Cir. 2009) (plan participant suing under ERISA must identify statutory endorsement of

the action <u>and</u> assert constitutionally sufficient injury arising from the breach of a statutorily imposed duty); *see also* <u>Malkani v. Clark Consulting, Inc.</u>, 727 F. Supp. 2d 444, 451 (D. Md. 2010) (rejecting proposition that mere existence of section 502(a)(3) is sufficient to grant standing for Article III purposes and declining to follow <u>FIRF</u>).

The Second Circuit's recent discussion in <u>Kendall</u> is instructive here.  There, as here, the plaintiff first alleged that the defendant failed to comply with ERISA and thereby deprived her of her entitlement to such compliance.  The Second Circuit concluded that such allegations "in and of themselves [are insufficient] to constitute an injury-in-fact sufficient for constitutional standing." <u>Kendall</u>, 561 F.3d at 121.

The plaintiff in <u>Kendall</u> went on to allege that the employer's ERISA violations prevented her from realizing higher benefits. *Id.* at 119.  Although her claim was brought under ERISA section 502(a)(3) as one for injunctive relief, the Second Circuit concluded that she was effectively claiming money damages outside that provision's scope. Defendants here contend, and I agree, that notwithstanding Plaintiffs' characterization of their claim as for injunctive relief, the allegations that Defendants' records are insufficient to accurately determine benefits due to Plaintiffs ultimately seeks monetary relief.  Plaintiffs cannot dispute that, if they succeed in demonstrating that Defendants' compliance with ERISA will result in the crediting of additional hours toward their pension benefits, they will realize a monetary gain.  Indeed, they anticipate as much in their prayer for relief, where they seek "an award of the value of plaintiffs' unpaid wages, including fringe benefits."[2]

---

[2] Because this claim is, at its core, one for monetary relief, ERISA section 502(a)(3) does not provide a basis for relief.  Rather, such a claim should be brought under ERISA section 502(a)(1)(B). Plaintiffs' failure to state a cognizable claim under section 502(a)(3) is an alternative ground for dismissal as a matter of law.

(Docket No. 1-2 at 26.)

The Kendall Court, upon finding that the plaintiff sought monetary relief, reiterated the Second Circuit's prior holding that "[r]equests for restitution or disgorgement under ERISA . . . require[ ] that a plaintiff satisfy the strictures of constitutional standing by demonstrating individual loss . . . ."  561 F.3d at 119 (quoting Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, 433 F.3d 181, 200 (2d Cir. 2005)).  It then went on to consider whether the plaintiff's alleged injuries were sufficient to satisfy Article III.

Typically, "[t]o qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical."  Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003) (internal quotation marks omitted).  In FIRF, the case on which Plaintiffs rely, the Second Circuit held that a plaintiff may establish standing for an ERISA breach of fiduciary duty claim based on a theoretical injury arising from the mismanagement of fund assets. 964 F. 2d at 149.   The FIRF plaintiffs were found to have standing where they pointed to "an identifiable and quantifiable pool of assets to which they had colorable claims."  Kendall, 561 F.3d at 121.

Even assuming a theoretical injury could also establish standing for a recordkeeping claim, I find the allegations here insufficient.   Accepting Plaintiffs' allegations as true, and giving their Complaint the most favorable reading, they infer an injury from the alleged recordkeeping violation that is purely speculative.  As a preliminary matter, they have not identified which defendant(s) they work(ed) for, nor alleged that the various pension plans Defendants purportedly sponsor are even subject to ERISA, nor that any one of them is a participant in any particular plan.  Beyond that, their ERISA

8

claims are based on an alleged failure keep accurate records of all time worked by class members and to credit them "with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation under the Plans, *or to investigate whether such hours should be credited*."  (Docket No. 1-2 ¶¶ 111-12 (emphasis supplied)).   In short, these Plaintiffs point to something they believe should have been done—i.e., crediting hours—but then immediately concede they do not know whether or not the hours they refer to are to be credited at all under the terms of the unspecified plans.   As was the case in Kendall, 561 F.3d at 122, these Plaintiffs have failed to point to any identifiable or quantifiable asset to which they are entitled and thus fail to allege a theoretical injury-in-fact sufficient for purposes of Article III standing.

This ruling applies equally to Plaintiffs' breach of fiduciary duty claim which is based on precisely the same allegations as the recordkeeping claim.    Notwithstanding Defendants' failure to move for dismissal of the fiduciary duty claim on this basis, federal courts have an "independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*."   College Standard Magazine v. Student Ass'n of State Univ. of N.Y. at Albany, 610 F.3d 33, 35 (2d Cir. 2010).   Accordingly, the first and second causes of action are dismissed for lack of subject matter jurisdiction.

**C.    The RICO Claim**

Plaintiffs' third cause of action alleges civil RICO violations, specifically, that Defendants devised and carried out a scheme to fraudulently deprive them of their lawful entitlement to wages and overtime.   (Docket No. 1-2 ¶¶ 114-15.)   In furtherance of their scheme, Defendants are alleged to have mailed payroll checks to Plaintiff that were "false

and deceptive because they mislead [sic] Plaintiffs about the amount of wages to which they were entitled, as well as their status and rights under the FLSA." (*Id.* ¶¶ 116-17.) Plaintiffs claim that they relied to their detriment on the misleading payroll checks.

### 1.   *FLSA Preemption*

Defendants first argue that this claim is preempted by the FLSA.   Based on Plaintiffs' allegations, it is beyond dispute that their RICO claim is predicated solely on alleged violations of wage and hour laws.   They plead an unlawful, willful, and systematic intent by Defendants to retain wages and overtime due to Plaintiffs, resulting a deprivation of Plaintiffs' lawful entitlement to those payments.   For the reasons stated below, I conclude that the RICO claim is preempted to the extent it falls within the FLSA's scope.

There exists a well-established principle that "a precisely drawn, detailed statute preempts more general remedies." Hinck v. United States, 550 U.S. 501, 506, 127 S. Ct. 2011, 167 L. Ed. 2d 888 (2007).   Where Congress devises a "careful blend of administrative and judicial enforcement powers," this principle leads  "unerringly to the conclusion that [the statute] provides the exclusive judicial remedy for claims [falling within its scope]." Brown v. GSA, 425 U.S. , 833-35, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976).

The purpose of the FLSA is "to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981).   The Act provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which

he is employed." 29 U.S.C. § 207(a)(1).  The regular, minimum rates at which employees must be paid are established by section 206 of the FLSA.  *Id*. § 206(a).  The FLSA sets forth a broad civil enforcement scheme, pursuant to which "[a]ny employer who violates the provisions of section 206 or section 207 . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  *Id*. § 216(b).

Courts in this Circuit routinely have found federal RICO claims precluded where the source of the asserted right is covered by a more detailed federal statute.  For example, in Norman v. Niagara Mohawk Power Corp., the plaintiffs brought a claim under RICO alleging that their employer retaliated against them when they attempted to bring the employer's pattern of racketeering to the attention of regulatory authorities.  873 F.2d 634, 635 (2d Cir. 1989).  The Second Circuit examined the remedies available to employees making such "whistleblower" claims and concluded that section 210 of the Energy Reorganization Act, which provides a remedy for employees who have been retaliated against for making complaints and creates a procedural framework for vindicating their right to be free of such conduct, was the exclusive federal remedy for employee protection.  *Id*. at 637.  The Second Circuit agreed with the district court's finding that the plaintiffs' complaint, "distilled to its essence, alleges no more than that appellants were discriminated against for having made complaints about safety at a nuclear plant—a section 210 claim," and affirmed dismissal of the RICO claim.  *Id*. at 638.  *See also*, DeSilva v. North Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 515

(E.D.N.Y. 2011) (finding RICO claim preempted because, *inter alia*, "allowing plaintiffs to pursue a civil RICO claim grounded in the same facts as plaintiffs' FLSA claim would, essentially, create a new private right of action that would allow plaintiffs to seek treble damages—instead of . . . unpaid wages and liquidated damages—and would render meaningless [the FLSA's remedial provisions]"); Eldred v. Comforce Corp., No. 08 Civ. 1171, 2010 U.S. Dist. LEXIS 18260, at *28-29 (N.D.N.Y. March 2, 2010) (finding RICO claim precluded as duplicative of FLSA claim, and noting that "[t]his approach ensures that the '[a]rtful invocation of controversial civil RICO, particularly when inadequately pleaded' does not endanger the uniform administration of core concerns of the primary enforcement scheme." (quoting Norman, 873 F.2d at 637)).

Applying the persuasive analysis of the foregoing cases, this Court finds that allowing plaintiffs to recover under civil RICO for alleged substantive violations of the FLSA would thwart Congress's careful, comprehensive scheme to remedy wage and hour violations falling within the FLSA's scope.

The question remaining is whether any of Plaintiffs' civil RICO claims fall outside the FLSA's broad reach. Plaintiffs allege that they were not paid overtime wages and that they were not paid straight-time wages for all hours worked. To the extent the RICO claim alleges a failure to pay overtime, it clearly rests on "their status and rights under the FLSA."[3] (Docket No. 1-2 ¶ 117.) A RICO claim that merely recasts alleged FLSA violations under a different label is precluded by the FLSA's broad remedial scheme.

---

[3] As other courts in this Circuit have done, I reject Plaintiffs' assertion that their RICO claim is distinct and separate from their FLSA claim (pending in the Federal Action, 08-CV-380) because it is based on "defendants' misleading pattern of conduct with knowing and reckless disregard for plaintiffs' rights." (Docket No. 13 at 14.) The rights they refer to are their statutory FLSA rights which clearly form the basis for their RICO claim.

DeSilva, 770 F. Supp. 2d at 517.

However, Plaintiffs also claim that they were not paid their regular rate of pay for all hours worked. The FLSA provides for the recovery of straight-time wages only to the extent the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage. Plaintiffs do not allege that their wages fell below this FLSA threshold. Therefore, to the extent the RICO claim is based on unpaid straight time wages, it falls outside the FLSA's scope and is not preempted.

### 2.   *Failure to State a Claim*

Defendants next argue that Plaintiffs' RICO claim fails because it is not pled with sufficient particularity and does not adequately allege the existence of a RICO enterprise.

To state a civil claim under RICO, a plaintiff must allege the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962. There are seven constituent elements: (1) that the defendant (2) through the commission of two or more ["predicate"] acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. Moss v. Morgan Stanley Inc., 719 F.2d 5, 16-17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984).

Racketeering activity is defined in the statute as any act, including bribery and extortion, chargeable under State law and punishable by imprisonment for more than one year; any act indictable under a number of specified federal criminal provisions, including mail and wire fraud; and any offense involving bankruptcy, securities fraud or drug-related

activities that is punishable under federal law. See 18 U.S.C. § 1961.  The enumerated

activities qualify as predicate acts.

Plaintiffs allege that Defendants engaged in predicate acts by mailing payroll

checks that were "false and deceptive because they mislead [sic] Plaintiffs about the

amount of wages to which they were entitled, as well as their status and rights under the

FLSA."  (Docket No. 1-2 ¶¶ 116-17.)  Defendants are purported to have "repeatedly

mailed payroll checks" on "a regular basis . . . in the last ten years."  *Id*. at ¶ 116.

The Second Circuit has spoken on the requirements for a mail fraud claim:

> To prove a violation of the mail fraud statute, plaintiffs must establish the existence of a fraudulent scheme and a mailing in furtherance of the scheme. . . . While there is no requirement that the defendant personally mail a letter, the plaintiff must show "1) that the defendant 'caused' the mailing . . .and 2) that the mailing was for the purpose of executing the scheme or . . .'incidental to an essential part of the scheme.'" <u>United States v. Bortnovsky</u>, 879 F.2d 30, 36 (2d Cir. 1989) quoting <u>Pereira v. United States</u>, 347 U.S. 1, 8-9, 98 L. Ed. 435, 74 S. Ct. 358 (1954)).

> Allegations of mail fraud must be made with the particularity required by Federal Rule of Civil Procedure 9(b) . . . . Pursuant to this higher pleading standard, the "complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." <u>Cosmas v. Hassett</u>, 886 F.2d 8, 11 (2d Cir. 1989).  Plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme.  See <u>Sun Sav. & Loan Assoc. v. Dierdorff</u>, 825 F.2d 187, 196 (9th Cir. 1987) (mail fraud adequately pled where complaint described letters' date, content, origin, destination, and role in fraudulent scheme); <u>Sears v. Likens</u>, 912 F.2d 889, 893 (7th Cir. 1990) (dismissing complaint that failed to allege how misrepresentations furthered fraudulent scheme) . . . .

<u>McLaughlin v. Anderson</u>, 962 F.2d 187, 190-91 (2d Cir. 1992).  Defendants urge that this

claim must be dismissed because Plaintiffs have not made particularized allegations of

all circumstances constituting fraud—including time, place, speaker, contents of the

alleged misrepresentations, and why the statements are fraudulent—as required by Federal Rule of Civil Procedure 9(b).  *See* <u>Anatian v. Coutts Bank (Switz.) Ltd.</u>, 193 F.3d 85, 88 (2d Cir. 1999).  This is particularly so, they claim, where the complaint lumps together all defendants, misrepresentations, and methods of communication.  *See* <u>Maki v. Grenda</u>, No. 92 Civ. 819,  1993 U.S. Dist. LEXIS 15046, at *4-5 (W.D.N.Y. Oct. 15, 1993) (Rule 9 requirements not met where complaint vaguely attributed fraudulent acts to "defendants"); <u>McNamara v. City of New York</u>, No. 05 Civ. 6025, 2007 U.S. Dist. LEXIS 25015 (E.D.N.Y. Mar. 30, 2007) ("Plaintiff merely accuses handfuls of defendants of engaging in an alleged enterprise without identifying each defendants['] role in and relationship to the enterprise. Therefore, Plaintiff fails to meet the requirement under Rule 9(b) that allegations of fraud must connect to each individual defendant.").

Although 130 paragraphs are incorporated by reference into the RICO claim, no specific descriptions of times, places, content, or methods of such misrepresentations are made therein.  Nor do Plaintiffs identify which of the named entities or individuals were responsible for "causing" or mailing the allegedly fraudulent documents.  Plaintiffs argue that this case may involve hundreds or thousands of employees for whom pleading each and every paycheck would be impractical or impossible.  They urge that, in such circumstances, their allegation that mailings occurred at least 100 times within the last 10 years is sufficient to meet Rule 9's requirements.  This Court disagrees.  The Complaint is brought by four individuals on behalf of themselves and a putative class.  The named Plaintiffs have offered no reason for their failure to specifically identify predicate acts particular to them.  I find that the mail fraud allegations do not comply with Rule 9, thereby warranting dismissal of the RICO claim.  At least two other district courts have reached

15

the same conclusion on identical, or nearly identical, allegations.  *See*, DeSilva, 770 F. Supp. 2d at 526-27; Barrus v. Dick's Sporting Goods, Inc., 732 F. Supp. 2d 243, 260-62 (W.D.N.Y. 2010).

Defendants also argue that Plaintiffs have failed to plead the existence of a RICO enterprise.  In this regard, Plaintiffs allege that Catholic Health System, Inc. ("CHS") is a "healthcare consortium" engaged in the care of the sick, with all defendants constituting an "integrated, comprehensive, consolidated health care delivery system."  (Docket No. 1-2 ¶¶ 13, 15.)  The Defendants are alleged to have common ownership and common management, and are further identified as Plaintiffs' employer (single, joint or otherwise) and/or alter egos of each other.  (*Id*. ¶¶ 12, 18-20.)  CHS is named as the RICO enterprise, of which each named Defendant is a member.  (*Id*. ¶¶ 13, 121-23.)

A RICO enterprise under Section 1961(4) includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  An association-in-fact enterprise is " a group of persons associated together for a common purpose of engaging in a course of conduct" which is "proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).

"[I]t is well established in this Circuit that, under § 1962(c), the alleged RICO 'person' and RICO 'enterprise' must be distinct."  Falco v. Bernas, 244 F.3d 286, 307 (2d Cir. 2001) (citations and internal quotation marks omitted).  The distinctness requirement cannot be circumvented by alleging "a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of

the defendant."  Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994).

Defendants argue, *inter alia*, that the requisite distinction between person and enterprise does not exist here.  I agree for the reasons stated below.

As already noted, CHS is described as a consortium of which each named Defendant is a member.  The two individual defendants, McDonald and Moley, are alleged to be part of CHS's senior executive team responsible for consortium-wide oversight and management.  (Docket No. 1-2, ¶¶ 18, 21-23, 46-47.)  According to Plaintiffs, McDonald is involved in all business functions of Defendants, has authority to draft and enforce consortium-wide policies, and was actively involved in the creation of the illegal wage policies at issue here.  (*Id*. ¶¶ 25, 40, 43.)  Moley is allegedly authorized to direct all aspects of human resources functions across CHS, and actively advised defendants on the enforcement of the illegal policies.  (*Id*. ¶¶ 47-49.)  The entities are described as commonly owned, managed, and subject to consortium-wide decisionmaking such that they are alter egos of each other.  These alleged relationships compel the conclusion that the entities and individuals named here were acting as agents of CHS when they purportedly implemented and enforced consortium-wide illegal wage policies. Riverwoods, 30 F.3d at 344 (enterprise made up of corporate defendant and its agents does not meet distinctness requirement); *see also*, Physicians Mut. Ins. Co. v. Greystone Servicing Corp, Inc., No. 07 Civ. 10490, 2009 U.S. Dist. LEXIS 32616, at * (S.D.N.Y. Mar. 25, 2009) (facts alleged in complaint—that defendants companies were alter egos and shared common ownership, directors, managers, and employees—not sufficient to allege

that defendants were sufficiently separate such that one could be considered a distinct RICO enterprise); DeSilva, 770 F. Supp. 2d at 529-30 (finding a distinct enterprise was insufficiently pled on allegations virtually identical to those made here).

Plaintiffs' allegations that the enterprise was formed by combining CHS with its officers and the hospitals and health care entities it manages are clearly insufficient to show that CHS associated with others to form an enterprise "sufficiently distinct from itself." Riverwoods, 30 F.3d at 344. As there appears to be no set of facts Plaintiffs could plead consistent with the foregoing that would state a cognizable claim, their RICO claim is dismissed with prejudice.

**D.      State Common Law Claims**

Plaintiffs assert a number of state common law claims seeking unpaid wages and overtime based on contract and the state laws of New York. Defendants contend that these claims are preempted in their entirety by federal law and also that they fail to state claims for relief.

**1.      *FLSA Preemption***

As noted at Point III.C.1., *supra*, the FLSA sets forth a broad enforcement scheme for violations of federal wage and hour law. It was determined, in the context of the RICO claim, that the claim was preempted insofar as it sought unpaid overtime, but was not preempted to the extent it sought unpaid straight time wages. Some additional discussion is warranted here given Plaintiffs' reliance on the "state laws of New York"—presumably, the NYLL—in support of their common law claims.

The FLSA contains a savings clause which allows the states to enact their own

stricter wage and hour provisions.  *Id.* § 218(a).  New York has enacted such provisions, pursuant to which employees must be compensated for all hours worked.  The NYLL provides for full recovery of all unpaid straight-time wages owed.  In contrast, the FLSA provides for such recovery only to the extent the amount of compensation received by an employee results in a straight-time hourly rate that is less than the applicable federal minimum wage.  In other words, New York has adopted a stricter wage provision with regard to straight-time.  As for overtime, "the Second Circuit Court of Appeals and . . . New York District Courts have verified that overtime claims may be brought pursuant to NYLL § 650 *et seq.* and that implementing regulation 12 NYCCRR 142-2.2 carries the force of law."  Hinterberger, 2009 U.S. Dist. LEXIS 108116, at *12 n.6 (citation and quotation marks omitted).  The NYLL overtime regulation expressly incorporates the FLSA's calculation provisions, and so recovery for overtime wages is precisely the same under either statute.

Although the Second Circuit has held that *statutory* wage claims under the NYLL (which provides equal or greater protections than the FLSA) are not preempted by the FLSA, it has not yet considered whether preemption applies when unpaid wages are sought, as here, via *common law* claims.  The circuit courts that have done so have concluded that such claims are preempted where the relief sought is available under the FLSA.  *See* Anderson v. Sara Lee Corp., 508 F.3d 181, 192-93 (4th Cir. 2007) (noting the FLSA's unusually elaborate enforcement scheme and finding plaintiffs' negligence, contract, and fraud claims preempted where recovery on those claims would require the same proof as a claim asserted under the FLSA);  Williamson v. General Dynamics Corp.,

208 F.3d 1144, 1153-54 (9th Cir. 2000) (noting that claims directly covered by the FLSA—such as overtime and retaliation disputes— must be brought under the FLSA, but finding that the plaintiffs' fraud claim was not preempted where the employer's conduct was not covered by any FLSA provision).

In many district court cases where this issue has arisen, the plaintiffs' common law claims were brought in conjunction with FLSA claims, based on the same facts, and seeking the same relief.  In such cases, most courts have had no trouble dismissing the common law claims as preempted to the extent recovery is available under the FLSA, even where the plaintiff also brought wage claims under a parallel state statute.  *See, e.g.*, Guensel v. Mount Olive Bd. of Educ., Civ. No. 10-4452, 2011 U.S. Dist. LEXIS 132102, at * 19 (D.N.J. Nov. 16, 2011) (common law claims that are "directly covered" by FLSA must be brought under the FLSA); DeMarco v. Northwestern Mem. Healthcare, Civ. No. 10-C-397, 2011 U.S. Dist. LEXIS 88541, at *17-18 (N.D. Ill. Aug. 10, 2011) (unjust enrichment and other state common law claims seeking relief available under the FLSA are preempted); Bouthner v. Cleveland Constr., Inc., Civ. No. RDB-11-244, 2011 U.S. Dist. LEXIS 79316, at *21-22 (D. Md. July 21, 2011) (although common law claim made no reference to FLSA, it was preempted where claim sought wages mandated by FLSA).

Two courts in this Circuit have expressly concluded that common law claims are preempted to the extent they seek recovery available under the FLSA, but are not preempted to the extent that state law provides a remedy not available under federal law. DeSilva v. N. Shore-Long Island Jewish Health Sys., 770 F. Supp.2d 497, 532-33 (E.D.N.Y. 2011) (finding common law claims preempted by FLSA to extent they sought overtime wages, but not preempted to extent they sought straight-time pay not available

under the FLSA); Barrus v. Dick's Sporting Goods, Inc., 732 F. Supp. 2d 243, 263 (W.D.N.Y. 2010)[4] (dismissing common law claims seeking unpaid overtime as preempted by FLSA, but allowing claim for unpaid straight time wages to go forward).  Other district courts have held likewise.  See, e.g., Monahan v. Smyth Auto., Inc., No. 10-CV-00048, 2011 Dist. LEXIS 9877, at *9-11 (S.D. Oh Feb. 2, 2011) (unjust enrichment claim not preempted where it was based on alleged failure to pay the state's minimum wage, which was higher than FLSA minimum wage rate); Mickle v. Wellman Prods. LLC, No. 08-CV-0297, 2008 U.S. Dist. LEXIS 63697, at *10-11 (N.D. Okla. 2008) (while state statute created a distinct cause of action for overtime compensation, the plaintiffs' common law claim seeking such relief was duplicative of remedies provided by the FLSA and was preempted).

The law on this issue is by no means settled—some courts have declined to find common law claims preempted where a state's statute incorporates the FLSA's minimum wage and/or overtime provisions, and others have dismissed entirely common law claims for which only partial relief is found in the FLSA.  However, I find the foregoing cases from within this Circuit persuasive.  As the DiSilva court noted, the FLSA's savings clause expressly provides that wage and hour actions may be brought under state wage *statutes*, "it says nothing about a party's ability to pursue general *common law* claims that have no specific relevance to the labor law context."  2011 U.S. Dist. LEXIS 27138, at *93 (emphasis in original).

---

[4] The Barrus decision reverses that portion of Lopez, 2008 U.S. Dist. LEXIS 4744, at *13, 19-20, the Defendants appear to rely on for the proposition that the FLSA provides an exclusive remedy for all common law wage claims, including those seeking straight-time pay.

Here, Plaintiffs common law claims are not brought in conjunction with any claim for relief under the FLSA or the NYLL.  They refer generally to state statutory law only as the basis for calculating damages.  This vague reference to state law is not enough to draw purely common law claims into the ambit of the FLSA's savings clause.  Accordingly, to the extent Plaintiffs are seeking unpaid overtime wages that are available under the FLSA, their claims are preempted, and to the extent they are seeking straight-time wages for which no federal relief is available, they are not.  Accordingly, each common law claim is dismissed with prejudice only to the extent it seeks unpaid overtime wages.

### 2.    *LMRA Preemption*

Plaintiffs allege here that they and all class members entered into contracts for employment with Defendants, "including implied contracts and/or express contracts such as collective bargaining agreements," in which Defendants made implied or express promises "to fulfill all of their obligations pursuant to applicable state and federal [wage] law[s]."  (Docket No. 1-2 ¶¶ 91-92.)  Defendants argue that claims for unpaid straight time wages, based on the alleged breach of these contract terms, are preempted by the LMRA.

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185(a).  It is well-settled that § 301 also contemplates suits by individual employees to vindicate "uniquely personal" rights, such as wages, that find their source in a collective bargaining agreement (a "CBA").  Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562, 96 S. Ct. 1048, 47 L. Ed. 2d 231 (1976).

Actions within the scope of § 301 are controlled by federal law and the Supreme Court has described the pre-emptive force of § 301 as "so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.   Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."   Franchise Tax Bd.of Ca. v. Construction Laborers Vacation Trust, 463 U.S. 1, 23, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) (internal quotation marks omitted).

Defendants' preemption argument is rejected at this juncture.  Here, the Complaint merely alleges that Defendants repeatedly represented they would comply with statutory wage laws, even though they had no intention of doing so.   Even assuming such representations were made in CBAs covering one or more of the Plaintiffs,[5] it would not alter the fact that the alleged right Plaintiffs seek to vindicate— wages due under statutory law—arises independent of any CBA.  The mere existence of a CBA does not mandate preemption in such circumstances.  As the Second Circuit recognized in Foy v. Pratt & Whitney:

> [Section] 301 preemption applies only when necessary to assure that the purposes animating § 301 will be frustrated neither by state laws purporting to determine questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement . . . .

127 F.3d 229 (2d Cir. 1997) (citation and quotation marks omitted).

Where, as here, a right arises from state law, the court must consider whether the

---

[5] Plaintiffs refer generally to implied and express contracts, the latter of which may include individual employment agreements and/or collective bargaining agreements.  As the named Plaintiffs have not alleged the nature of their contract with any particular Defendant, there is no way of determining, at this point, whether a CBA is even at issue such that the preemption issue is ripe for consideration.

state law claim requires interpretation of a provision of the CBA.   If interpretation is required, the claim is preempted.   Levy v. Verizon Information Servs. Inc., 498 F. Supp. 2d 586, 596 (E.D.N.Y. 2007).   Defendants' contention that this common law claim necessarily involve interpretation of CBAs is unpersuasive.   Defendants have not pointed to a particular CBA that even applies to Plaintiffs, much less requires interpretation.   Because it is not yet evident which Plaintiffs are members of a bargaining unit or which CBAs are relevant, this Court has no basis upon which to evaluate the need to refer to or interpret any wage-related provision(s).   It may well be that, with more information, Defendants can demonstrate preemption.   At this juncture, however, their argument is insufficient.[6]

### 3.   *Failure to State a Claim*

Before considering Defendants' further arguments for dismissal of Plaintiffs' common law claims for straight-time wages, this Court must again consider its jurisdiction—specifically, whether, having disposed of all claims based on federal law, it should decline to exercise supplemental jurisdiction over these purely state law claims. *See* 28 U.S.C. § 1367(c)(3).

The United States Supreme Court has instructed that courts ordinarily should decline to exercise supplemental jurisdiction in the absence of federal claims.   *See* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (noting that in the usual case where all federal claims are eliminated before trial,

---

[6]   For substantially the same reasons, this Court previously concluded, in 08-CV-380, that it was not yet able to determine whether § 301 preempts Plaintiffs' New York Labor Law claim.   Hinterberger, 2009 U.S. Dist. LEXIS 108116, at *8-10("It may well be that Plaintiffs' NYLL claim is preempted . . . . However, . . . the time to make that determination is after the parties and the Court are clear on which bargaining units are implicated in this action and which CBA or CBAs apply.").

the relevant factors informing the decision of whether to exercise supplemental jurisdiction will "point towards declining to exercise jurisdiction over the remaining state-law claims"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.").

The Second Circuit shares this view; where "federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); see also, Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."); Powell v. Gardner, 891 F.2d 1039, 1047 (2d Cir. 1989) ("in light of proper dismissal of the § 1983 claim against the County, the district court should have declined to exercise pendent jurisdiction over Powell's state-law claims against the County").

This case is an exception to the general rule.  As fully discussed above, Plaintiffs' common law claims were brought in this Court in the first instance, based on precisely the same facts and circumstances as the claims still pending in the Federal Action.  Plaintiffs then chose to voluntarily dismiss the instant claims and others, only to resurrect them all in two state court actions.  Principles of judicial economy, convenience to parties and witnesses, and fairness all weigh in favor of retaining jurisdiction here.  Moreover, there is no harm to the principle of comity.  Plaintiffs already have chosen to bring their NYLL claims in this Court, and what remains of their state common law claims seek the same

relief under alternate legal theories.  For these reasons, I find it appropriate to exercise supplemental jurisdiction over this action.

> a.    *Estoppel*

In their fourth cause of action, Plaintiffs claim "[d]efendants are estopped from asserting statute of limitations defenses against plaintiffs."  (Docket No. 1-2 ¶ 135.)  As pled, this is not a distinct cause of action, but instead is an equitable bar to defendants' assertion of a statute of limitations defense.  DiSilva, 770 F. Supp. 2d at 535 (citation omitted).  Thus, Plaintiffs fail to state a claim for relief and such "claim" is dismissed.  This ruling does not, however, prevent Plaintiffs from asserting equitable estoppel at an appropriate point in the litigation, should any of their claims go forward and should Defendants assert a statute of limitations defense.  *Id*. (citation omitted).

> b.    *Breach of Contract*

As an alternative to their LMRA preemption argument, Defendants urge that Plaintiffs cannot base a breach of contract claim on the purported breach of a statutory duty.  As previously discussed, Plaintiffs allege that each class member's express or implied employment contract "included an implied or express term that defendants agreed to fulfill all of their obligations pursuant to applicable state and federal law, including payment for all time worked and overtime at time and one-half for time worked over 40 hours in a week."  (Docket No. 1-2 ¶¶ 91-92.)  This promise to follow the law is the only "contractual" promise identified in the Complaint.  Courts in New York have held that "[a] promise to perform an existing legal obligation is not valid consideration to provide a basis for a contract."  Goncalves v. Regent Int'l Hotels, Ltd., 58 N.Y.2d 206, 220 (1983) (defendant's "statutory obligation cannot be transformed into a contractual performance,

nor may the [plaintiff's] statutory right be transformed into a contractual privilege"); *see also*, Fafoutis v. Lyons, 149 A.D.2d 565, 566 (2d Dep't 1989) ("A promise to comply with a pre-existing legal duty is not adequate consideration upon which a valid contract may be based.").  New York contract law has carved out one exception to this general rule—*i.e.*, *written* acknowledgment of a pre-existing [obligation] is independently enforceable without additional consideration.  R.B. Ventures, Ltd. v. Shane, No. 91 Civ. 5678, 1999 U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y.  1999) (quoting CIBC Bank & Trust Co. v. Banco Cent. do Brasil, 886 F. Supp. 1105, 1112 (S.D.N.Y. Aug. 18, 1995)).

Here, however, this exception does not work to salvage Plaintiffs' contract claim.  In response to Defendants' motion, and perhaps in an effort to avoid preemption, Plaintiffs state that they are withdrawing "their breach of contract claims under any written agreements," and rest the claim solely on the implicit contractual obligations they contend are part of every employer-employee relationship.  Plaintiffs have offered no persuasive authority in support of their assertion that, absent written agreements, at-will employer-employee relationships are grounded in contract.  The four elements of a breach of contract claim are: (1) the existence of a valid contract, (2) plaintiff's performance of the contract, (3) defendant's material breach of the contract, and (4) resulting damages.  Noise in The Attic Prods., Inc. v. London Records, 10 A.D.3d 303, 306-07 (1st Dep't 2004).  However, as already noted, "[a] promise to perform a pre-existing legal obligation does not amount to consideration."   Murray v. Northrop Gruman Information Tech, Inc., 444 F.3d 169, 178 (2d Cir. 2006).  As Plaintiffs allege nothing more in this regard, they have not sufficiently alleged the existence of an at-will employment contract.

As there appears to be no set of facts consistent with the foregoing under which

27

Plaintiffs can successfully plead a breach of contract claim, this claim is dismissed with prejudice.

        *c.*     *The Remaining Claims*

Although Plaintiffs withdrew their breach of contract claim to the extent it rested on written agreements, they appear to rely on those written agreements with regard to their remaining causes of action for breach of implied covenant of good faith and fair dealing, unjust enrichment/restitution, and quantum meruit.  For example, Plaintiffs allege that "[b]oth unwritten contracts for at-will employment and written contracts between Class Members (or their agents) and defendants contained an implied covenant of good faith and fair dealing which obligated defendants to perform the terms and conditions of the employment contract fairly and in good faith and to refrain from doing any act that would violate any state or federal law governing the employment relationship." (Docket No. 1-2 ¶ 94.)

Defendants argue that, under New York Law, Plaintiffs may assert quasi-contractual claims such as these only where no valid contract exists and, because Defendants do not dispute the existence of contracts governing their employment relationships with Plaintiffs,[7] the claims must be dismissed.  Although the Court agrees with this general legal principle, it must consider whether an exception applies here. "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage

---

[7]  Plaintiffs' argument that there is a bona fide dispute as to the existence of employment agreements is rejected.  Although it appears the parties may disagree as to the nature of the agreements implicated here—particularly, collective bargaining agreements versus other forms of employment contracts—the fact that Plaintiffs are parties to employment agreements is not disputed, at least at this juncture.

them as sounding in fraud, conversion, and other torts, as well as unjust enrichment, implied and quasi contract, and quantum meruit, are generally precluded, *unless based on a duty independent of the contract*." Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy, 10-3667-cv, 2011 U.S. App. LEXIS 23863, at *3-4 (2d Cir. Nov. 30, 2011) (emphasis supplied) (citing Diesel Props S.R.L. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 54 (2d Cir. 2011) (unjust enrichment); Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (quantum meruit); Clark-Fitzpatrick, Inc. v. Long Island R.R., 70 N.Y.2d 382, 388-89 (1987) (quasi-contract and tort); Sergeants Benev. Ass'n Annuity Fund v. Renck, 19 A.D.3d 107, 116 n.3 (1st Dep't 2005) (negligent misrepresentation); Baker v. Norman, 643 N.Y.S.2d 30, 33 (1st Dep't 1996) (fraud)).

It is clear that all claims in this action are predicated on Defendants purported failure to comply with statutory wage and hour laws.  As has already been determined, Plaintiffs' right to mandated wages would exist in the absence of employment agreements. However, in this context, "a plaintiff's entitlement to recover in [quasi-contract] outside a valid contract may depend on a showing that the additional recovery sought is so distinct from the contractual obligations that it would be unreasonable for the defendants to assume the provided services were rendered without expectation of further pay.  Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) (citation omitted).  "It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."  Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co., 70 N.Y.2d 382,

29

389 (1987).   Here, Defendants' contractual payment obligations are alleged to be precisely the same as their statutory obligations.   As such, the quasi-contract claims are precluded.

Defendants further argue for dismissal of the quasi-contract claims on the ground that Plaintiffs have an adequate remedy at law.   To prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant was enriched at the plaintiff's expense in circumstances such that equity and good conscience require restitution.   Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000). A claim for quantum meruit recovery is established by showing the performance of services, the defendant's acceptance of those services, the expectation of compensation for those services, and the reasonable value of same.   Mid-Hudson, 418 F.3d at 175 (2d Cir. 2005).   Here, Plaintiffs claims are based on Defendants' alleged failure to comply with their legal obligations to pay Plaintiffs all earnings to which they were entitled.   As a result, Defendants were enriched at their expense while they were been denied the reasonable value of their services.   (Docket No. 1-2 ¶¶ 96-101.)

Plaintiffs have legal remedies available to them in the form of the state statutory claim they are pursuing in the pending Federal Action, 08-CV-380, against the same Defendants and based on the same facts.   They have not argued any basis for concluding that the NYLL claim is not sufficient to address Defendants' alleged failure to pay them straight-time wages for all hours worked.[8]   "Generally, if there is an adequate remedy at

---

[8]  Plaintiffs' argument that they can maintain these claims because they seek injunctive relief is specious.  They offer no authority in support, and these common law claims, by their very nature, are claims for restitution and monetary recovery.

law, a court will not permit a claim in equity." <u>Bongat v. Fairview Nursing Care Ctr., Inc.</u>, 341 F. Supp. 2d 181, 189 (E.D.N.Y. 2004) (dismissing claims of unjust enrichment and quantum meruit under New York law where claim based on wage and hour statute provided adequate remedy at law).  The quasi-contract claims are subject to dismissal for this reason, as well.  Accordingly, these claims are dismissed with prejudice.

## IV.  CONCLUSION

For the reasons given above, Defendants' Motion to Dismiss is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 6) is GRANTED;

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:        January 16, 2011
              Buffalo, New York


                                         <u>/s/William M. Skretny</u>
                                         WILLIAM M. SKRETNY
                                         Chief Judge
                                         United States District Court